IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAREY DIANE DORGAN,                )
                                   )
                Plaintiff,         )
                                   )
        v.                         )    Civil Action No. 19-919
                                   )
ANDREW SAUL,                       )
Commissioner of Social Security,   )
                                   )
                Defendant.         )

## O R D E R

AND NOW, this 19th day of February, 2021, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 13) filed in the above-captioned matter on March 19, 2020,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on February 18, 2020,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

## I.    **Background**

Plaintiff Carey Diane Dorgan filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, on December 22, 2005. (R. 264-68). On May 26, 2006, the Commissioner found her to be disabled as a result of her bipolar disorder effective June 3, 2005. (R. 142-53). Upon review four years later, disability was

continued pursuant to a determination dated June 14, 2012.  (R. 154-58).  In 2016, Plaintiff's case was again reviewed, and on July 21, 2016, the Commissioner determined that Plaintiff was no longer disabled and that her benefits should be terminated.  (R. 159-62).  Plaintiff requested reconsideration and a hearing before a State Agency Disability Hearing Officer, and the determination that Plaintiff was no longer disabled was upheld on May 12, 2017.  (R. 163-65, 170-89).

Plaintiff subsequently sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on November 9, 2018.  (R. 194-96, 38-102).  On February 19, 2019, the ALJ issued a decision finding that Plaintiff's disability ended On July 21, 2016 because medical improvement related to her ability to work had occurred.  (R. 13-30).  The Appeals Council declined to review the ALJ's decision on June 3, 2019.  (R. 1-4).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.  **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  See 42 U.S.C. § 405(g).  The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  "'Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'"  Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period.  See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).  As noted, the Commissioner here found that Plaintiff met this standard and found her to be disabled as of June 3, 2005.

However, even if a claimant is found to be disabled, pursuant to 20 C.F.R. § 404.1594, the Social Security Administration ("SSA") is required periodically to determine whether "there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work."  Id. at § 404.1594(a).

Medical improvement is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the

> most favorable medical decision that [the claimant was] disabled
> or continued to be disabled.  A determination that there has been a
> decrease in medical severity must be based on improvement in the
> symptoms, signs, and/or laboratory findings associated with [the
> claimant's] impairment(s).

Id. at § 404.1594(b)(1).  If the SSA finds that there has been such a decrease in the severity of the claimant's impairments, it must determine whether this has led to an increase in the claimant's functional capacity to do basic work activities.  See id. at § 404.1594(b)(3).  A previously disabled claimant who experiences such medical improvement and an increase in functionality may no longer be entitled to disability benefits.  See id. at § 404.1594(g).

In determining whether to continue a claimant's disability, the ALJ handling the matter uses a sequential evaluation process similar to the one used initially in determining whether a claimant is disabled.  See id. at § 404.1594.  At the first step, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity.  If so, the disability claim will be denied.  See id. at § 404.1594(f)(1).  If not, the ALJ must determine whether the claimant's impairments meet or equal the criteria for a listed impairment.  If a claimant meets a listing, a finding of disability is automatically directed.  See id. at § 404.1594(f)(2).  If not, Step Three requires the ALJ to determine whether there has been medical improvement in the claimant's impairments compared to the "comparison point decision" ("CPD") – the most recent favorable finding that the claimant is disabled.  If medical improvement has not occurred, the analysis proceeds to Step Five.  If it has occurred, the analysis proceeds to Step Four.  See id. at § 404.1594(f)(3).

At Step Four, if there has been medical improvement, the ALJ must decide whether this improvement is related to the claimant's ability to work.  If it is related, the analysis proceeds to Step Six.  If not, it proceeds to Step Five.  See id. at § 404.1594(f)(4).  The fifth step – applicable

if medical improvement has not occurred or if any such improvement is not related to the claimant's ability to work – requires a determination as to whether one of two sets of exceptions apply. If none apply, disability will continue. If one of the exceptions in the first set apply, the analysis proceeds to Step Six. If one of the exceptions in the second set apply, disability will be discontinued. See id. at § 404.1594(f)(5). At Step Six, the ALJ must determine whether the claimant's current impairments are "severe." See id. at § 404.1594(f)(6). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." Id. at § 404.1522. If the claimant's current impairments are not severe, disability ends. If they are, the analysis continues to Step Seven.

Step Seven requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See id. at § 404.1594(f)(7). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy. See id. at § 404.1594(f)(8). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. If the claimant can perform such work, he or she is no longer disabled.

## III.   The ALJ's Decision

In his February 19, 2019 decision, the ALJ found that the most recent favorable medical decision finding Plaintiff to be disabled was the decision issued on June 14, 2012 and determined this to be the CPD. (R. 15). The ALJ further found that, as of the date of the CPD, Plaintiff's bipolar disorder constituted a severe impairment and that this impairment resulted in an RFC

where she would be unable to meet the basic mental demands of competitive work on a sustained basis.  (Id.).

The ALJ went on to apply the sequential analysis and found that Plaintiff had not engaged in substantial gainful activity through the date of the ALJ's decision.  (Id.).  He determined that, since July 21, 2016, Plaintiff continued to have several severe impairments, including fibromyalgia and obesity with neck and back pain, pacemaker implementation related to brady and tachycardia, bipolar disorder, anxiety, and post-traumatic stress disorder, but concluded that Plaintiff's impairments did not meet any of the listings.  (R. 15-19, 20).

The ALJ proceeded to find, however, that medical improvement had occurred on July 21, 2016, and that, as of that date, the impairments present on the date of the CPD had decreased in medical severity to the point where Plaintiff's RFC had increased.  He found therefore that the medical improvement was related to Plaintiff's ability to work because it resulted in an increase in her RFC.  (R. 19-20).  Specifically, the ALJ found that, as of July 21, 2016, Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with the following exceptions:

- She can lift up to 50 pounds occasionally and lift or carry up to 25 pounds frequently.
- She can stand or walk for approximately six hours in an eight-hour workday.
- She can sit for approximately six hours in an eight-hour workday.
- She is limited to simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes.

(R. 20-28).

After making this determination, the ALJ found that Plaintiff was still not capable of performing her past relevant work.  He found, however, that in light of the testimony of a vocational expert and based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the

representative occupations of laundry worker, wafer mounter, cleaner/preparer, cleaner/polisher, finish inspector, and garment sorter.  (R. 28-30).  Accordingly, the ALJ found that Plaintiff's disability ended as of July 21, 2016.  (R. 30).

## IV.  Legal Analysis

Plaintiff argues that the ALJ's determination that she underwent a medical improvement beginning on July 21, 2016, and that the medical improvement was related to her ability to work because it resulted in an increase in her RFC, is not supported by substantial evidence.  The Court agrees and, accordingly, remands for reconsideration of this issue.

"A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)."  20 C.F.R. § 404.1594(b)(1).  If there has been such improvement, the ALJ must next determine whether the decrease in the severity of the claimant's impairments has led to an increase in the claimant's functional capacity to do basic work activities.  See id. at § 404.1594(b)(3).  This analysis, therefore, requires two distinct findings:

> To apply the medical improvement test, the ALJ must *first* compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled.  See id. at § 404.1594(b)(7).  ***Then***, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision.  See id. at § 404.1594(c)(2).

Shepherd v. Apfel, 184 F.3d 1196, 1201 (10th Cir. 1999) (emphasis added).  See also Smalls v. Comm'r of Soc. Sec., Civ. No. 09-2048 (JLL), 2010 WL 2925102, at *4 (D.N.J. July 19, 2010); 20 C.F.R. § 404.1594(b)(7).  The problem here is that the ALJ, at least in part, conflated the

analysis as to whether medical improvement had occurred and the analysis as to whether it related to Plaintiff's ability to work, specifically in regard to her RFC.

In finding that relevant medical improvement had occurred in Plaintiff's conditions, the ALJ stated that Plaintiff's "disability finding was based in part on her history of several hospitalizations for mental health issues," and found that since 2016, it had been many years since Plaintiff had required psychiatric hospitalization.  (R. 19).  He further stated that Plaintiff's prior disability finding was based also on "difficulty with memory, stress, and social isolation that resulted in a marked limitation in her ability to maintain concentration, persistence, or pace." (Id.).  While acknowledging that Plaintiff still "generally reported some issues with stress and memory," the ALJ noted that her mental status examination findings in these areas had been relatively unremarkable and that she had a decreased level of social isolation and decreased limitations in her ability to interact with others.  In so finding, he relied on the consultative examinations of Michael Skarlinski, Ph.D., and Mohammad K. Malik, D.O., which contained what the ALJ characterized as entirely unremarkable findings.  (Id.).  The ALJ went on to find that the decrease in medical severity of Plaintiff's impairments resulted in a less restrictive RFC and that the medical improvement was therefore related to her ability to work.  (R. 19-20).

What makes the analysis in this case tricky is that it is not clear whether the evidence upon which the ALJ relied supports a finding that Plaintiff's impairments actually improved since the CPD or whether it simply provides a different perspective as to her RFC generally. Part of the problem is that the ALJ did not sufficiently focus on comparing Plaintiff's medical conditions as of 2016 with those same conditions in 2012.  For instance, the ALJ relied in part on the fact that it had been a long time since Plaintiff had been hospitalized for mental health issues as of 2016.  However, recent hospitalization was not relied upon in the initial determination that

Plaintiff was disabled in 2006.  Indeed, even then, she was described as having been hospitalized in the "distant past."  (R. 413).  It is not clear, then, that the impact of these past hospitalizations was substantially different in 2016 than they had been in 2006, let alone the CPD from 2012. Moreover, although the ALJ stated that mental status examination findings regarding stress and memory had been relatively unremarkable, he did not compare the examination findings to those from 2012.  In other words, he did not consider whether the findings were any more "unremarkable" than they had been in 2012.  Indeed, he acknowledged that Plaintiff continued to report issues with stress and memory as of 2016.  He likewise did not adequately explain how living alone and maintaining some friendships in 2016 compared to the level of social isolation Plaintiff experienced as of the CPD.

As discussed, the ALJ did cite to the findings from the June 2, 2016 consultative examination by Dr. Skarlinski (R. 692-701) and from the June 29, 2016 consultative examination by Dr. Malik (R. 704-18) in finding medical improvement.  Indeed, Dr. Skarlinski found that Plaintiff had no work-related limitations, concluding that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself, does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  (R. 697).  However, Dr. Skarlinski did not purport to make any finding about the level of change in Plaintiff's conditions from 2012 to 2016; he simply provided an opinion as to her then-current level of functioning. Dr. Malik performed an internal medicine examination focusing on Plaintiff's physical functionality.  While he did perform a brief mental status screening as part of this exam, his findings in no way demonstrate any change in Plaintiff's mental condition.  Therefore, while relevant, these reports alone do not demonstrate any actual medical improvement, particularly in light of the fact that, even in 2012, there were opinions in the record finding that Plaintiff had

fairly minimal work-related limitations, at least in regard to memory and social interaction, including the June 5, 2012 consultative report of T. David Newman, Ph.D. (R. 469-73). What appears to be unchanged from 2012 to 2016, is that there is a wide variety of opinions as to Plaintiff's ability to function; in 2012, as in 2016, there were opinions that Plaintiff had much more restrictive limitations as well as those finding fairly minimal limitations. Because of this, and in light of the fact that Drs. Skarlinski and Malik did not attribute their findings to any specific improvement or change in Plaintiff's condition, the opinions appear to do nothing more than provide differing opinions as to Plaintiff's level of functioning. They would therefore merely be a part of a pattern of disparate viewpoints rather than evidence of a change in Plaintiff's bipolar condition.

This is further reinforced by the fact that Plaintiff's treating health care providers more specifically found that there had been no improvement in Plaintiff's conditions. Chandra Diebold, CRNP, on November 2, 2016, opined that Plaintiff had experienced no medical improvement and that, in fact, her conditions had worsened with the stress of losing her long-term disability. (R. 720). John H. Soffietti, M.D., of PBS Mental Health Associates, where Plaintiff had treated since 2009, continued to opine that Plaintiff had numerous marked and extreme limitations on June 6 and October 30, 2018. (R. 1074-77, 1203-06).[1] While certainly not dispositive, the fact that her ongoing treatment providers did not indicate any improvement in her condition further clouds the analysis.

Accordingly, further consideration of this matter is warranted. The Court does not find that the record necessarily shows an absence of medical improvement that would impact Plaintiff's ability to work. However, the Court finds that the evidence upon which the ALJ relied

---

[1] While state reviewing agent James Vizza, Psy.D., did, on June 15, 2016, opine that Plaintiff had experienced medical improvement, the ALJ does not specifically rely on Dr. Vizza's Opinion in finding that medical improvement had occurred.

in so finding, without further explanation, is insufficient to support such a conclusion.  As discussed, upon a finding of medical improvement, the ALJ must determine whether that improvement is related to the claimant's ability to work.  That second finding will certainly require a determination of Plaintiff's RFC.  However, a finding of medical improvement must come first; merely relying on new RFC findings is not sufficient in this case.  There has been a wide divide in the opinions of the medical experts in this case as to Plaintiff's functionality even prior to the CPD.  A more focused analysis as to the severity of Plaintiff's medical impairments in 2016 in comparison to the severity of those impairments as of the CPD in 2012 will help determine whether the opinions of the consultants in 2016 are merely part of the pattern of inconsistency or evidence of medical improvement.

## V.    **Conclusion**

In short, the Court holds that the finding of the ALJ that Plaintiff, on July 21, 2016, experienced medical improvement related to her ability to work is not supported by substantial evidence.  The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

<div style="margin-left: 50%;">

s/Alan N. Bloch
United States District Judge

</div>

ecf:          Counsel of record